# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**THOMAS FRANCIS REBMAN AND
DANNY BRANDNER, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,**

                    **Plaintiffs,**

**-vs-**                                              **Case No.  6:06-cv-1476-Orl-28KRS**

**FOLLET HIGHER EDUCATION GROUP,
INC.,  DAYTONA BEACH COMMUNITY
COLLEGE, INC.,**

                    **Defendants.**

_____

## ORDER

        This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION TO COMPEL DEFENDANT FOLLETT HIGHER EDUCATION GROUP, INC. TO FULLY RESPOND TO PLAINTIFFS' FIRST AND SECOND REQUEST FOR PRODUCTION AND FIRST SET OF INTERROGATORIES (Doc. No. 35)** |
| **FILED:** | **February 27, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part and
**DENIED** in part.

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR LEAVE OF COURT TO FILE REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT FOLLETT HIGHER EDUCATION GROUP TO FULLY RESPOND TO PLAINTIFFS' FIRST AND SECOND REQUEST FOR PRODUCTION AND FIRST SET OF INTERROGATORIES (Doc. No. 46)** |
| **FILED:** | **March 23, 2007** |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

## I.   INTRODUCTION.

Plaintiffs Thomas Francis Rebman and Danny Brandner, who are students at Daytona Beach Community College (DBCC), filed a putative class action complaint against Defendants Follett Higher Education Group, Inc. (Follett)[1] and Daytona Beach Community College, Inc. (DBCC).  They allege that Follett and DBCC entered into a contract that limits the amount that Follett is contractually entitled to charge for the sale of textbooks or to pay for the repurchase (buyback) of textbooks.  They further allege that Follett violated the contractual price and payment provisions with respect to books purchased by the plaintiffs, and that DBCC is aware of Follett's practices but facilitates such practices because Follett shares revenues with DBCC.  The specific causes of action stated by the plaintiffs in the complaint are two counts of Third-Party Breach of Contract, two counts of Violation of the Florida Deceptive and Unfair Trade Practices Act, and one count of Civil Conspiracy.  Doc. No. 1.

Rebman and Brandner seek to represent a class of other similarly situated individuals who purchased textbooks or resold textbooks at any bookstore operated by Follett throughout the United

---

[1]  While the complaint names the defendant as Follet Higher Education Group, Inc., it appears that the proper spelling is Follett Higher Education Group, Inc.  *See* Doc. No. 41-2.

States (hereinafter the "Follett Campus Bookstore(s)") and paid more or received less than the amount

Follett was required to pay pursuant to the relevant contract.  They also seek certification of subclasses

of individuals who purchased or resold textbooks at any Follett Campus Bookstore in Florida, and at

any Follett Campus Bookstore at DBCC.  Doc. No. 1.

The presiding District Judge, the Honorable John Antoon, II, denied the motion to dismiss the

complaint.  Doc. No. 49.  Accordingly, it is appropriate to permit the parties to engage in class

certification discovery.  Rebman and Brandner now seek an order compelling Follett to respond more

fully to outstanding discovery requests.  I will discuss the discovery requests in dispute by category.

## II.   ANALYSIS.

*A.    Requests for Production Regarding Compliance with Contract Prices*.

In their First Request for Production of Documents, requests 1 and 2, the plaintiffs ask for all

contracts between Follett and any college or university at which it operated or managed a bookstore

at any time in the previous five years.[2]  In requests 21 and 22, the plaintiffs ask for information about

textbooks that Follett was required to buy back under the academic adoption program.  In requests 5,

7, 8, and 10, the plaintiffs ask for documents showing the price at which textbooks were sold at the

bookstores referred to in requests 1 and 2, as well as the retail price of such textbooks.[3]  In requests,

13, 14, 15, and 16, the plaintiffs ask for the same types of documents with respect to the price that

Follett paid for each textbook it purchased.

---

[2]  Each pair of requests in this category first asks for documents as to Follett bookstores in
Florida and next asks for documents as to Follett bookstores throughout the United States.

[3]  In requests 6 and 9, the plaintiffs ask for all documents showing the "new textbook selling
price" of textbooks referred to in requests 5 and 8.  It is unclear what documents are sought beyond
those responsive to the other requests in these categories.

Follett responded to requests 1 and 2 by producing each form of language used in the responsive contracts.  It objected to producing the contracts themselves as beyond the scope of permissible discovery, overbroad, burdensome and requested merely to harass and annoy Follett.  Follett declined to produce any documents responsive to the other requests in this category based on the same objections.

The documents requested are directly relevant to establishing the elements necessary to support class certification as outlined in Federal Rule of Civil Procedure 23(a) and (b) – specifically including numerosity of the class members; commonality of questions of fact or law; typicality of the claims of the class members; and whether proceeding as a class action is appropriate.  *Cf. Klay v. Humana,* Inc., 382 F.3d 1241, 1252-60 (11th Cir. 2004)(reviewing evidence that plaintiffs must present at class certification stage); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 689-91 (N.D. Ga. 2003)(same).  Thus, Follett's argument that the requested information is not relevant is unavailing.

Simply viewing the various forms of language used in contracts by Follett, without the dates on which the contracts were applicable and the specific locations to which the contracts applied, would not be sufficient to learn whether there are other putative class members who paid more or received less than the amount required by the relevant contract.  Thus, Follett's contention that it has produced all of the discoverable information is not well taken.  However, with respect to the overbreadth objection, the plaintiffs have not established why they need five years of contracts at this stage of the litigation.  Accordingly, the motion to compel a further response to First Request for Production of Documents, requests 1 and 2, is **GRANTED** in part.  It is **ORDERED** that Follett shall

produce all responsive contracts in its possession, custody or control that were effective for textbook

sales and buybacks at Follett Campus Bookstores for the years 2005 and 2006.

With respect to its burdensomeness objection to the remaining requests in this category, Follett

presented the Declaration of Douglas M. Thompson, Senior Vice President and Chief Information

Officer for Follett.  Doc. No. 41-2.  Thompson avers that before 2005, Follett Campus Bookstores used

a textbook management system called Tom Tracks.  *Id.* ¶ 4.  Beginning in 2005, 266 of the Follett

Campus Bookstores began using the newer Course Tracks system.  *Id.*  These systems differ in that

Tom Tracks uses arbitrarily assigned SKU numbers to track textbooks, while Course Tracks uses a

standardized SKU number.  *Id.* ¶¶ 5, 7, 16.  Only the individual stores can determine which SKU

number relates to which textbook in the Tom Tracks system.  *Id.* ¶ 6.  The information linking a

textbook to a particular SKU number in Tom Tracks is kept only for twelve to fifteen months.  *Id.* ¶

6.[4]

Each textbook sale is captured in Follett's MMS electronic database.  *Id.* ¶ 5.  There are more

than 200 million sales transactions contained in MMS from June 2001 to the date of Thompson's

affidavit.  *Id.* ¶ 8.  Thompson avers that it would be necessary to create a special software program to

capture the information requested by Plaintiffs and translate the information into a meaningful and

readable format.  *Id.* ¶ 9, 17. [5]

---

[4]  Textbooks repurchased by Follett are tracked differently in Tom Tracks.  With respect to buyback transactions at stores using Tom Tracks, the information is not centrally captured, and is kept at individual stores for only twelve to fifteen months.  *Id.* ¶ 12.

[5]  The plaintiffs submitted the Declaration of Robert Peebles, who was the Trade Book Manager at a Follett Campus Bookstore at The Catholic University of America.  Doc. No. 35-9. Peebles avers that Follett has the capacity to run reports that reflect detailed information about the purchase and sale of textbooks.  His declaration is insufficient to establish that the reports would

Thompson's declaration is sufficient to support Follett's objection to the requests in this category as unduly burdensome and overbroad.  Accordingly, the motion to compel a further response to First Request for Production of Documents, requests 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 21, and 22, is **DENIED**.  The plaintiffs may serve new, more narrowly tailored requests for production of documents limited to the years 2005 and 2006.  Before doing so, however, counsel for the parties must confer in a good faith effort to discuss the form in which electronically stored information should be produced and how to ameliorate the costs attendant to production of the information.  *See* Fed. R. Civ. P. 26(f) & 2006 Advisory Committee Notes to that Rule.[6]

     B.     *Documents Relating to Merits and Damages*.

In their First Request for Production of Documents, requests 17, 18, 19, and 20, the plaintiffs seek information about the gross revenues earned and expended for textbook transactions at Follett Campus Bookstores for the previous five years.  It appears that these requests are designed to develop information about the recoverable damages.  *See* Doc. No. 35 at 13 ("These requests are related to the merits of Plaintiffs' claims, and particularly to damages . . . .").  In requests 23 and 24, and in Plaintiff's First Set of Interrogatories, interrogatory 2, plaintiffs seek information about money paid by Follett to the colleges and universities at which the Follett Campus Bookstores were located.  It appears that these requests are designed to gather information as to why the contracting colleges and universities did not enforce the contracts regarding prices paid for sale and buyback of textbooks.  In interrogatories 3 and 4, the plaintiffs seek information about the number of new and used textbooks

---

present the detailed information requested by the plaintiffs.

     [6] Nothing in this order prohibits the plaintiffs from seeking discovery relevant to their individual claims.

purchased and/or sold by Follett.  Finally, in requests 25, 26, 27, and 28, plaintiffs seek production of documents that refer to "faculty adoption incentive programs"and "guaranteed pricing," and, in requests 31 and 32, seek other documents concerning Follett's textbook sales practices, all of which, the plaintiffs argue, would be relevant to establish the merits of their claims.  Follett objected to these requests as overbroad, unduly burdensome, seeking information not reasonably calculated to lead to the discovery of admissible evidence, and designed to harass and annoy Follett.

While merits and damages discovery may be appropriate at some stage of the litigation, it is premature to require Follett to produce the detailed information requested at this time as to the entire putative class.  *Cf. Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570-71 (11th Cir. 1992)("To make early class determination practicable and to best serve the ends of fairness and efficiency, courts may allow classwide discovery on the certification issue and postpone classwide discovery on the merits.").

Accordingly, the motion to compel production of documents responsive to First Request for Production, requests 17, 18, 19, 20, 23, 24, 25, 26, 27, 28, 31, and 32, and Plaintiff's First Set of Interrogatories, interrogatories 2, 3, and 4,  is **DENIED** without prejudice to renewing it, if appropriate, after a class is certified or ninety days before the close of discovery if the class certification issue is not resolved by that date.  The plaintiffs may, however, seek discovery of information on the merits of and damages arising from their individual claims at any time.

In its presentations to the Court, Follett may not rely on evidence that it objected to producing in discovery.  Accordingly, it is **ORDERED** that Follett must, before relying upon such evidence,

produce all documents responsive to these discovery requests to counsel for the plaintiffs or file a motion for a protective order supported by good cause to relieve it from this obligation.

       C.      *Discovery Regarding Textbook Selection Practices.*

In their First Request for Production of Documents, requests 34, 35, 36, and 37, the plaintiffs seek documents showing the manner in which Follett selected course textbooks. Follett objects to these requests on the same basis it objected to the requests discussed above, but states that "documents responsive to this request will be made available for inspection following the entry of a mutually acceptable confidentiality order." Doc. No. 35 at 18.

The Federal Rules of Civil Procedure do not permit a party to withhold responsive documents as a method of coercing the requesting party to enter into a confidentiality agreement. Rather, Rule 26(c) requires the party from whom discovery is sought to move for a protective order if good cause exists to support such an order. *See Middle District Discovery (2001)* at 20 ("Upon receipt of objectionable discovery, a party has a duty to seek relief immediately, i.e., without waiting until the discovery is due or almost due."). In its response to the motion, Follett did not present any argument as to why good cause supports protection of responsive information, although it is unclear whether any responsive documents have been withheld. *See* Doc. No. 41 at 21 (Follett's counsel represents that "responsive documents were not withheld in connection with requests where Follett stated that responsive documents would be produced without waiving its objections to those requests.").

Accordingly, it is **ORDERED** that the motion to compel production of documents responsive to requests 34, 35, 36, and 37 is **GRANTED** based upon Follett's agreement to produce such documents, to the extent that responsive documents have not already been produced.

D.      *Audits of Colleges and Universities.*

In their Second Request for Production of Documents, requests 1 and 2, the plaintiffs seek all audits of any college or university at which there is a Follett Campus Bookstore for the last five years. The requests do not limit the subject-matter to audits pertaining to these colleges and universities' compliance with contractual requirements regarding the price at which textbooks were sold or purchased.  As such, the requests are facially overbroad.

Follett agreed to produce responsive documents regarding "audits conducted in connection with DBCC's bookstores" upon entry into a mutually acceptable confidentiality order.  Doc. No. 35 at 19. For the reasons discussed above, Follett's failure to move for a protective order undermines its argument that a confidentiality order must be entered before it should be required to produce documents pursuant to its agreement to do so.  Accordingly, it is **ORDERED** that the motion to produce documents responsive to the Second Request for Production of Documents, requests 1 and 2, is **GRANTED** with respect to audits conducted of Daytona Beach Community College bookstores for the previous five years, but **DENIED** in all other respects.

-9-

**III.    CONCLUSION.**

It is **ORDERED** that, on or before May 18, 2007, Follett shall produce for inspection and copying all documents responsive to First Request for Production of Documents, requests 1, 2, 34, 35, 36, and 37, and Second Request for Production of Documents, requests 1 and 2, to the extent required by this order.

**DONE** and **ORDERED** in Orlando, Florida on May 3, 2007.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties